IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Scott L. Ellison, #287202, | ) | C/A No.: 1:09-2261-CMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Anthony Padula, Lee | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Scott L. Ellison filed this petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and

Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's

motion for summary judgment and return. [Entry #9, 10]. Petitioner, through counsel,

filed a response in opposition to Respondent's motion. [Entry #13]. Having carefully

considered the parties' submissions and the record in this case, the court finds that

Respondent's motion for summary judgment should be granted.

I.      Procedural Background

In November 2001, Petitioner was indicted in Greenville County for Burglary in

the First Degree (2001-GS-13-971). (App. 666–67). He was also indicted in January 2002

in Richland County for Criminal Sexual Conduct First Degree (2002-GS-40-01587),

Kidnapping (2002-GS-40-921), Possession of an Unlawful Weapon During a Crime of

Violence (2002-GS-40-922), and Failure to Return Rented Vehicle over $5000

(2002-GS-40-02404). (App. 613-18; 668-669). Petitioner was represented by Sheila

Mims, Esquire, and Jill Andrews, Esquire, both Assistant Public Defenders with the Richland County Public Defenders Office. (App. 1-495). Petitioner was tried by a jury on all charges in Richland County on September 10–11, 2002, and convicted of Burglary First Degree, Criminal Sexual Conduct First Degree, Kidnapping, and Failure to Return Rented Vehicle over $1000. The indictment for Unlawful Possession of a Weapon was nol prossed. The Honorable Henry F. Floyd, then-Circuit Court Judge, sentenced Petitioner to thirty years each on the Kidnapping and Criminal Sexual Conduct convictions, to be served consecutively; fifteen years on the Burglary conviction, to be served consecutively; and thirty days for the Failure to Return Rental conviction, to be served concurrently.

Petitioner timely filed a Notice of Appeal on September 17, 2002, and an Amended Notice of Appeal on September 18, 2002. (App. 496-99). In his direct appeal, Petitioner was represented by Robert M. Pachak, Esquire, Assistant Appellate Defender with the South Carolina Office of Appellate Defense. Counsel filed an *Anders*[1] Brief, asserting the trial court erred in overruling trial counsel's objection to a mug shot of appellant being introduced into evidence. (App. 500-09). Petitioner did not file a pro se brief.

---

[1] *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

In an Unpublished Opinion filed January 21, 2004, the South Carolina Court of Appeals dismissed Petitioner's appeal pursuant to *Anders* and *State v. Williams*, 406 S.E.2d 357 (S.C. 1991), and granted counsel's motion to be relieved as counsel. (App. 510-11). The Remittitur issued on February 24, 2004.

Petitioner filed an application for Post-Conviction Relief (PCR) on May 24, 2004, alleging ineffective assistance of counsel, ineffective assistance of appellate counsel, and denial of due process and fair trial.

Petitioner filed three amended PCR Applications asserting new claims. An evidentiary hearing was held on September 14, 2006 before the Honorable John C. Hayes, III, at which Petitioner was represented by Tara Dawn Shurling, Esquire, who represents him in this habeas petition. (App. 546-98). The PCR Court dismissed Petitioner's PCR application in an order filed September 29, 2006. (App. 599-608).

Attorney Shurling timely-filed a Notice of Appeal from the denial of PCR on November 1, 2006 (App. 619-20) and filed a Petition for Writ of Certiorari. The South Carolina Supreme Court transferred Petitioner's PCR Appeal to the South Carolina Court of Appeals in an order dated July 11, 2008. The Court of Appeals denied the petition for Writ of Certiorari in an order filed November 6, 2008. Petitioner filed a Petition for Rehearing on November 20, 2008, which the Court of Appeals denied in an order on December 19, 2008.

Petitioner then filed a Motion for Leave to Submit Petition for Writ of Certiorari on March 16, 2009, stating that he was eager to present a petition to the South Carolina

Supreme Court to avoid a claim of lack of exhaustion in a future federal habeas action. In a published order filed on April 10, 2009, the Supreme Court denied the Motion for Leave to Submit Petition for Writ of Certiorari, noting that counsel for Petitioner filed a petition for a writ of certiorari from the PCR Court's order of dismissal, which petition the Court of Appeals denied. The Supreme Court noted it would not entertain petitions for a writ of certiorari under Rule 226 from orders such as the one issued by the Court of Appeals in this case, and it denied counsel's request for an extension of time to serve and file a petition for a writ of certiorari and her motion for leave to submit a petition for a writ of certiorari. The Remittitur issued on April 29, 2009. This habeas petition followed.

II.     Discussion

        A.     Trial Testimony

        The victim testified that Petitioner broke into her apartment by climbing through a bedroom window on the second floor. (App. 95). She testified that he punched her in the face a few times and forced her to leave the apartment at gunpoint, (App. 96), took her to an abandoned club, handcuffed her, and proceeded to beat her. (App. 104–07). She further testified that he threatened to kill her unless she went with him to Columbia. (App. 107). The victim testified that Petitioner drove them to Columbia to an apartment, where Petitioner eventually raped her. (App. 107-112). The next day, Petitioner took the victim to a Wal Mart to buy her some clothes, and after he went inside the store, she ran away from the car in the parking lot and found a woman who helped her. (App. 116-120). The woman testified that the victim approached her, shaking hysterically, and asked her for

help. (App. 183). She noted that the victim looked as if she had been beaten, and told her that she had been beaten and kidnapped. (App. 183-85). The police were called to the scene, and a Columbia Police Officer testified that he observed bruising on the victim's arms and legs. (App. 187-89). The nurse who examined the victim at the hospital testified to observing two contusions on the left side of the victim's forehead, abrasions and lacerations around her ears, contusions and abrasions on her back, abdomen, arms, and leg. (App. 221-230). The nurse observed redness around the victim's cervix and collected suspected seminal fluids later determined to be from Petitioner. (App. 230-34, 354-55). The treating physician testified that the victim had received a pretty severe beating, and the redness in her cervical area and broken skin of the labia minor were abnormal and were caused by forceful penetration. (App. 362-63). A Cheraw Police Officer testified that his department was called after one of the victim's family members received a message that Petitioner had broken into the victim's apartment and kidnapped her. (App. 300).

B.    Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:

**Ground One:** The Petitioner was denied the right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, when trial counsel failed to fully investigate the Petitioner's lease, and by failing to impeach the victim and her mother with the evidence contained in that document.

Supporting Facts: the Petitioner and the victim were married but separated at the time of the alleged crime. The victim alleged that the Petitioner sexually assaulted

her. The State sought to show that the victim's relationship with Petitioner had deteriorated; conversely, the Petitioner attempted to show that they still had a cordial relationship and that he would not have sexually assaulted her. Approximately three months prior to the alleged assault, the victim's mother co-signed the Petitioner's lease for his apartment. At trial, the victim's mother denied that she had co-signed for the lease agreement. Furthermore, the victim testified that she had nothing to do with the Petitioner's search for an apartment and that she did not believe that her mother had co-signed the lease agreement. Defense counsel did not take adequate steps to ensure that it could be proven that the victim's mother co-signed the lease agreement, thereby failing to impeach the victim and her mother with easily and readily obtainable evidence.

**Ground Two:** The South Carolina Supreme Court violated the Petitioner's equal protection and due process rights in denying his appeal.

Supporting Facts: the South Carolina Supreme court violated the Petitioner's equal protection and due process rights, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, when it dismissed the Petitioner's Petition for Writ of Certiorari to the South Carolina Court of Appeals. Under the South Carolina Appellate Court Rules all Post-Conviction Relief appeals go to the Supreme Court. Some PCR appeals are transferred to the Court of Appeals under current practice. The rules have not been changed to send all PCR appeals to the Court of Appeals. The practical effort of this practice is to randomly cut off access to review by the highest state court for some PCR applicants.

C.      Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

D.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed

by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254 ("Section 2254"). This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus

petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)  (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B)  (I) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[3] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

---

[3] If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has

procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

E.    Analysis

   1.    Procedural Bar

Petitioner concedes that his Ground Two due process argument was not presented to the Supreme Court, and he withdraws that portion of the allegation. With respect to Ground One and the remaining equal protection argument in Ground Two, it appears Petitioner has properly preserved these claims for federal habeas review, and they are addressed on the merits below.

   2.    Merits Review

   a.    Ground One

In Ground One, Petitioner alleges he was denied the right to the effective assistance of counsel because of trial counsel's failure to fully investigate Petitioner's lease, and by failing to impeach the victim and her mother with the evidence contained in the lease.

To prevail on an ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

Specifically, Petitioner asserts that trial counsel did not take adequate steps to ensure that it could be proved that the victim's mother had signed Petitioner's lease on an

apartment in Columbia, SC. Petitioner asserts that the victim and her mother could have been impeached if it were proved that the victim's mother did sign the lease, and that evidence would have shown that Petitioner and the victim still had a cordial relationship in an effort to establish that he would not have sexually assaulted her.

The PCR court denied relief upon these claims, noting that Petitioner had signed the apartment lease dated June 22, 2000, and listed himself as the resident. The application underlying the lease listed the victim as Petitioner's emergency contact, with a Cheraw address, and identified her as his "wife." The lease had as an attachment a document purportedly signed by the victim's mother, Elizabeth Howard, which was in the nature of a guarantee.

Trial counsel testified that she introduced the lease into the trial in an effort to prove that in spite of victim's testimony otherwise, she and Petitioner were at least to a degree involved in a relationship at least as late as the date of the lease. (App. 605). Petitioner asserted this attempt at impeachment of the victim (and subsequently her mother) constituted ineffective assistance of counsel because the solicitor, through victim's mother, offered proof that undermined trial counsel's use of the lease, specifically her denial that she signed the guarantee. *Id.*

At the PCR hearing, trial counsel testified that her point in introducing the lease was to show that Petitioner felt close enough with the victim to list her as an emergency contact. (App. 556-57). Counsel noted that she did not know in advance that there was going to be a credibility issue regarding the signatures on the lease agreement. (App.

556). A handwriting expert's report indicated that Petitioner was not the one who signed the victim's mother's name on the lease, (App. 650-56), and the notary's testimony at the PCR hearing indicated that it was highly unlikely that someone other than the victim's mother would have been the one who signed the lease agreement he notarized. (App. 585–89).

The PCR Court found that trial counsel had no reason to believe that the victim's mother would lie about signing on the lease prior to her testimony at trial. (App. 607). As a result, the PCR Court found counsel was not deficient in further investigating whether the victim's mother actually signed the lease. *Id.*

The court finds Petitioner has failed to show the PCR Court's determination of the facts was unreasonable or that its application of federal law was unreasonable. An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. *Sneed v. Smith*, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. *Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991). The courts recognize limits to investigation based on time, resources, and relevance and conclude that "*Strickland* does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." *Green v. French*, 143 F.3d 865, 892 (4th Cir. 1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. *Strickland*, 466 U.S. 690–91. Furthermore, a

petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial.

Trial counsel had no reason to believe that the victim's mother's signature on the lease would become a contested issue at trial or that the victim's mother would lie about having signed the guarantee. Counsel's main focus in presenting the lease agreement was to show that Petitioner felt he was on good enough terms with the victim that he named her as his emergency contact in the lease. The PCR court's finding that counsel was not deficient was reasonable, and Petitioner has failed to establish that he was prejudiced as a result of any deficiency by trial counsel with respect to the lease issue. Aside from testifying about the lease, the victim's mother only testified that the victim and her children were staying with her around the time of the incident in question, the victim maintained her own apartment, and the victim and Petitioner were separated. Therefore, impeaching the victim's mother would not have been sufficient to lead to a different result at trial.

In light of the overwhelming evidence of Petitioner's guilt, it is unlikely that the result would have differed had counsel done further investigation into the signature on the lease and presented the evidence regarding the victim's mother's signature to impeach her at trial. As a result, Petitioner cannot establish that he was prejudiced by any deficiency of counsel in regards to the handling of the victim's mother's signature on the lease. Therefore, Petitioner fails to establish the PCR court's decision on these claims was the result of an unreasonable determination of the facts or application of federal law.

A thorough review of the record by the undersigned results in the recommendation that Respondents' motion for summary judgment be granted on this ground.

    b.    Ground Two

In Ground Two, Petitioner contends that the South Carolina Supreme Court violated his constitutional rights, specifically his right to equal protection, when it dismissed his Petition for Writ of Certiorari to the South Carolina Court of Appeals. Petitioner claims that the Supreme Court's practice of transferring some PCR appeals to the Court of Appeals is to "randomly cut off access to review by the highest state court for some PCR applicants." This assertion is without merit.

First, with regard to Petitioner's claim that the state court was incorrect in its findings, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991) ("federal habeas corpus relief does not lie for errors of state law"). Therefore, Petitioner is not entitled to federal habeas relief on this claim.

Second, while Petitioner also raises federal claims with regard to this issue, errors of state law cannot be repackaged as federal errors simply by citing the due process clause. *Carson v. Director, Iowa Dep't of Correctional Servs.*, 150 F.3d 973, 975 (8th Cir.1998). A review of the record in this matter reveals no federal violation, and further, Petitioner has failed to show a violation of his federal constitutional rights. *Ross v. Moffitt*, 417 U.S. 600, 616 (1974) (noting ability of petitioner to have counsel prepare an initial brief in state court of appeals with discretionary review in the state supreme court,

and holding that such a system adequately assured the petitioner an "opportunity to present his claims fairly in the context of the State's appellate process"); *Sloan v. S.C. Bd. of Physical Therapy Examiners*, 636 S.E.2d 598 (S.C. 2006); *Denene, Inc. v. City of Charleston*, 596 S.E.2d 917 (S.C. 2004); *cf. Murray v. Giarratano*, 492 U.S. 1–7, 13 (1989) (O'Connor, J., concurring) ("A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings, . . . nor does . . . the Constitution require [] the States to follow any particular federal model in those proceedings."); *see also Evans v. Smith*, 220 F.3d 306, 312 (4th Cir.2000) (noting federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only when such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law . . ..").

Finally, even if Petitioner's claim properly asserted a federal claim, it fails on its merits, as counsel for Petitioner has been informed in prior cases. In *Haggins v. State*, 659 S.E.2d 170, 170 (S.C. 2008), the South Carolina Supreme Court held it would not entertain a petition for a writ of certiorari in a PCR matter after the South Carolina Court of Appeals has already denied that petitioner's writ of certiorari. In *Missouri v. State*, 663 S.E.2d 480 (S.C. 2008), the South Carolina Supreme Court extended the holding of *Haggins* to summary denials of *Johnson* petitions for writs of certiorari by the Court of

Appeals. Counsel for Petitioner was counsel of record in *Missouri* and raised the same issues presented here. In *Missouri*, the court held as follows:

> We find neither *Haggins*, nor our extension of *Haggins* herein, constitutes a violation of constitutional rights. *Ross v. Moffitt*, 417 U.S. 600 (1974); *Sloan v. S.C. Bd. of Physical Therapy Examiners*, 370 S.C. 452, 636 S.E.2d 598 (2006); *Denene, Inc. v. City of Charleston*, 359 S.C. 85, 596 S.E.2d 917 (2004); Rule 226(b), SCACR; 16C C.J.S. Constitutional Law § 1691 (2005).

663 S.E.2d at 596. Similarly, this court rejected counsel for Petitioner's identical argument in *Stradley v. Warden*, C/A No. 08-1875-GRA, 2009 WL 2914163 (D.S.C. Sept. 2, 2009). In that case, the court found the foregoing precedents "make it clear that a criminal appellant is entitled to due process protection when the state provides a first appeal as of right, but is not entitled to full due process protection in subsequent discretionary appeals." *Id.* at *12, citing *Ross*, 417 U.S. at 609–614.

The State "has a legitimate interest in conserving judicial resources and need not provide the same review of each type claim, particularly when [the State] already provides defendants with more than the constitutional minimum of opportunities for review." *Hunt v. Nuth*, 57 F.3d 1327, 1337 (4th Cir. 1995) (rejecting petitioner's equal protection argument because the state procedure differentiated between classes of cases, not classes of people).

The undersigned finds that South Carolina has a legitimate interest in conserving its judicial resources and is not required to treat all cases that are transferred to the Court

of Appeals by the Supreme Court equally. Therefore, Petitioner's Ground Two is without merit and should be dismissed.

III.    Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 30, 2010                              Shiva V. Hodges
Florence, South Carolina          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**